# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DISABILITY SUPPORT ALLIANCE,
on behalf of its members, and
SCOTT SMITH,

        Plaintiffs,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 15-3713 (MJD/DTS)

CCRE, LLC,

        Defendant.

Jennifer L. Urban, Legal for Good PLLC, Counsel for Plaintiff Disability Support Alliance.

Padraigin Browne, Browne Law LLC, Counsel for Plaintiff Scott Smith.

Peter M. Waldeck, Waldeck Law Firm P.A., Counsel for Defendant CCRE, LLC.

## I.  INTRODUCTION

This matter is before the Court on Plaintiff Scott Smith and Defendant

CCRE, LLC's Joint Motion to Dismiss [Docket No. 22] and Smith's Motion for

Sanctions Against Jennifer Urban Pursuant to Rule 11 of the Federal Rules of

Civil Procedure [Docket No. 35].  Also, within Plaintiff Disability Support

Alliance's Response Opposing Plaintiff Scott Smith's Motion for Sanctions

[Docket No. 30], it has requested Rule 11 sanctions against attorney Padraigin Browne. The Court heard oral argument on March 30, 2017. For the reasons that follow, the motion to dismiss and Smith's motion for sanctions are granted and Disability Support Alliance's request for sanctions is denied.

## II.     SUMMARY OF THE DECISION

Attorney Jennifer Urban filed a brief containing unsupported, irrelevant, and inflammatory allegations against Plaintiff Scott Smith, his attorney Padraigin Browne, and former members of Plaintiff Disability Support Alliance ("DSA"). Urban accused them of criminal activity, but provided no admissible evidence to support her claims. She made these irrelevant allegations with the intent to harass. Urban also failed to conduct a reasonable inquiry by lodging the baseless allegation that Smith was still a member of DSA, when documentary evidence showed that DSA acknowledged Smith's termination of his membership in November 2015. In order to deter such behavior in the future and to preserve the integrity of the judicial process, the Court grants Smith's motion for Rule 11 sanctions. Urban is ordered to pay Smith's attorneys' fees incurred in responding to improper allegations made for an improper purpose and in bringing a Rule 11 motion to stop Urban's unethical behavior.

DSA's request for sanctions is baseless and was filed in violation of the

Federal Rules of Civil Procedure's safe harbor provision. Its request for

sanctions against Browne is denied.

Finally, DSA lacks standing, so it is dismissed from this case.

## III.    BACKGROUND

### A.    Allegations in the Complaint

The Complaint alleges as follows:

Plaintiff Disability Support Alliance ("DSA") is a Minnesota nonprofit

corporation. (Compl. ¶ 8.) Each member of DSA is a person with a disability

who lives in Minnesota. (Id.) DSA's purpose "is to 'eliminate discrimination on

the basis of disability' and 'promote the betterment of the lives of those living

with disabilities.'" (Id.)

Plaintiff Scott Smith is a member of DSA and resident of Minnesota.

(Compl. ¶ 9.) Smith uses a wheelchair for mobility. (Id. ¶ 10.)

Defendant CCRE, LLC ("CCRE"), is a Minnesota limited liability company.

(Compl. ¶ 11.) CCRE owns the Cedar Cliff Shopping Center located in Eagan,

Minnesota. (Id.)

On April 22, 2015, Smith visited the Cedar Cliff Shopping Center and

found 5 accessible parking spaces marked with paint and signage and

accompanied by adjacent access aisles, although the parking lot had more than
200 parking spaces. (Compl. ¶¶ 12-13.) Additionally, the access aisles were not
level and had ramps that bridged the change in level between the parking lot and
the sidewalk adjacent to the shopping center. (Id. ¶ 14.) Smith uses a vehicle
with a car-top wheelchair carrier, which he cannot operate if a vehicle is parked
in the adjacent parking space and there is no access aisle. (Id. ¶ 15.)
Furthermore, access aisles with slopes may cause his wheelchair to become
unstable during transfer between the chair and his vehicle. (Id.)

Because of the architectural barriers at the Cedar Cliff Shopping Center,
Smith and other DSA members were deterred from visiting the Cedar Cliff
Shopping Center, although they intended to return to patronize the center and its
tenant business. (Compl. ¶ 16.) Smith attempted to access the Cedar Cliff
Shopping Center, but could not do so due to the barriers. (Id. ¶ 17.) There is no
allegation that any DSA member other than Smith visited the Cedar Cliff
Shopping Center.

B. **Procedural History**

On September 23, 2015, DSA and Smith sued CCRE in this Court. The
Complaint asserts Count 1: Violations of the Americans with Disabilities Act, 42
U.S.C. §§ 12101 et seq. ("ADA"); Count 2: Violations of the Minnesota Human

Rights Act, Minn. Stat. § 363A ("MHRA") [1]; and Count 3: Civil Damages for Bias Offenses. In filing the lawsuit, both DSA and Smith were represented by attorney Paul Hansmeier of Class Justice PLLC.

On August 22, 2016, attorney Padraigin Browne substituted for Hansmeier as counsel for Smith. [Docket No. 16] On September 12, 2016, the Minnesota Supreme Court suspended Hansmeier from the practice of law in Minnesota. In re Disciplinary Action against Hansmeier, 884 N.W.2d 863 (Minn. 2016). On September 15, 2016, the District of Minnesota suspended Hansmeier from practicing in the District of Minnesota, effective September 26, 2016. In the Matter of the Petition for Disciplinary Action against Paul Robert Hansmeier, Miscellaneous Case No. 16-53 (JRT) (D. Minn. Sept. 15, 2016). After September 26, 2016, DSA was unrepresented in the current case.

On November 30, 2016, Smith and CCRE filed a joint motion to dismiss DSA and noted that Smith and CCRE had reached a settlement. [Docket No. 22] They argued that DSA should be dismissed because it had been proceeding pro se for several months since Hansmeier's suspension. Alternatively, they claimed that DSA lacked standing to continue prosecuting its claims in this lawsuit.

---

[1] The Court notes that, after the commencement of this lawsuit, the Minnesota legislature amended the MHRA in order to address what the legislature judged to be the possibility of abusive lawsuits regarding architectural barriers. See Minn. Stat. § 363A.331.

On December 28, 2016, attorney Jennifer Urban filed a notice of appearance on behalf of DSA in this lawsuit. [Docket No. 28] Also on that date, DSA filed a Memorandum of Law Opposing Joint Motion to Dismiss. [Docket No. 27] This brief contained 12 pages of inflammatory allegations of criminal wrongdoing such as tax evasion, disability benefits fraud, and theft against DSA by Smith, Browne, and former DSA members Melanie Davis, Zach Hillesheim, and Aaron Dalton. The Court will not compound this harassment by repeating the allegations here. Significantly, DSA has submitted no affidavits to support its allegations. Although Urban has filed three documents entitled "Affidavit of Exhibits" with attached exhibits, none are affidavits. [Docket Nos. 29, 31, 42] Each "affidavit" is a list of exhibits and a signature line signed by Urban. There is no statement of personal knowledge, no statement that the attached exhibits are what the list says they are, no sworn statement, no declaration under penalty of perjury, and no notarization. Cf. 28 U.S.C. § 1746. Moreover, many of the allegations in the brief are made with no citation to the record at all.

In the Memorandum of Law Opposing Joint Motion to Dismiss [Docket No. 27], DSA also claimed that Smith was still a member of DSA because Eric Wong, DSA Chair, had never received a written resignation from Smith. (Id. at

16, 18.)  DSA also asserted that all DSA members had signed Member

Assignment of Litigation Proceeds Agreements ("Assignment Agreements"),

which assigned to DSA any proceeds from ADA or MHRA litigation in which

the members participated, after deduction for attorneys' fees and costs.

According to Urban, within 4 hours of filing the Memorandum of Law

[Docket No. 27] on December 28, she was contacted by the Star Tribune and the

attorney for a defendant from another case in which Browne is the plaintiff's

attorney.  On December 29, 2016, the Star Tribune published an article based on

DSA's Memorandum of Law, repeating some of the criminal allegations against

Smith and the other former DSA members.  Fox 9 then ran its own similar story.

Other media then published additional articles.  Urban claims that she did not

contact any media outlets to request coverage; rather, they contacted her.

In a subsequent brief filed January 6, 2017 [Docket No. 30], Urban asserts

that she received an envelope postmarked December 30, 2016, from Smith and

Dalton, which contained copies of 1) Smith's written resignation from DSA

membership, dated November 3, 2015, and addressed to Wong; 2) Smith's

Assignment Agreement termination, dated December 29, 2016, and addressed to

Urban; 3) Dalton's written resignation from the DSA membership, dated

November 3, 2015, and addressed to Wong; and 4) Dalton's Assignment

Agreement termination, dated December 29, 2016, addressed to Urban.

In the January 6 brief and a February 1, 2017, brief, DSA claimed that

Smith had filed a motion for Rule 11 sanctions on December 30, 2016.  (<u>See</u>

[Docket No. 30 at 4; [Docket No. 41] DSA Brief at 4.)  However, the docket

reflects that Smith filed no motion for sanctions until January 26, 2017.  [Docket

No. 35]

In DSA's January 6 brief, it stated that it was giving 21-day notice for Rule

11 sanctions against Browne.  [Docket No. 30]  At that time, Smith had not filed a

motion for sanctions against Urban; however, DSA sought sanctions based on

Smith's alleged motion for sanctions and claimed that "Smith provided zero

notice – much less 21-days' notice – sent no letter, e-mail, or other written

correspondence to Attorney Jennifer Urban or DSA detailing any alleged

improper conduct and / or any perceived evidentiary defects. "  (<u>Id.</u> at 10.)

DSA's request for sanctions against Browne was only contained within its brief.

On January 10, Smith filed his Reply in Support of Joint Motion to Dismiss

[Docket No. 32] and the Smith Affidavit [Docket No. 33], to which he attached

emails demonstrating that he had resigned from DSA on November 5, 2015, and

that Wong had emailed back on November 9 and 10, 2015, acknowledging that Smith had resigned.

On January 12, Smith filed his Opposition to the Document Filed by Disability Support Alliance at Docket No. 30, opposing DSA's request for sanctions, and pointing out that Smith had not yet filed any motion for sanctions. [Docket No. 34]

On January 26, Smith filed a Motion for Sanctions Against Jennifer Urban Pursuant to Rule 11.  [Docket No. 35]

On February 1, DSA filed a brief in opposition to Smith's Motion for Sanctions.  [Docket No. 41]

## IV.    DISCUSSION

### A.     Standing

#### 1.      Standing Standard

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.  One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013) (citations omitted).  "The law of Article III standing, which is built on separation-of-powers

principles, serves to prevent the judicial process from being used to usurp the

powers of the political branches."  Id. (citations omitted).  "To show Article III

standing, a plaintiff has the burden of proving: (1) that he or she suffered an

injury-in-fact, (2) a causal relationship between the injury and the challenged

conduct, and (3) that the injury likely will be redressed by a favorable decision."

S.D. v. U.S. Dept. of Interior, 665 F.3d 986, 989 (8th Cir. 2012) (citations omitted).

> [A]n association has standing to bring suit on behalf of its members
> when: (a) its members would otherwise have standing to sue in their
> own right; (b) the interests it seeks to protect are germane to the
> organization's purpose; and (c) neither the claim asserted nor the
> relief requested requires the participation of individual members in
> the lawsuit.

Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).


2.          **Standing Discussion**

Discovery is closed and DSA has not and cannot assert facts to satisfy the

Hunt test.  As in Disability Support Alliance v. Heartwood Enterprises, LLC,

> The extent of injury to individual DSA members requires
> individualized proof, because some disabled people may be able to
> access [the subject property] without the need for removal of
> architectural barriers.  Plaintiffs have not asserted that all DSA
> members depend on a wheelchair for mobility, nor whether all
> members are physically disabled, rather than disabled in some other
> way that does not affect mobility.  The DSA has failed to meet the
> requirements for associational standing, and therefore has no right
> to sue [the defendant].

No. 15-CV-529 (PAM/FLN), 2016 WL 740411, at *4 (D. Minn. Feb. 24, 2016).

Moreover, it is undisputed that Smith is no longer a member of the DSA. (It appears only Wong remains as a member.)  "Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, but Article III demands that an actual controversy persist throughout all stages of litigation." Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013).  See also E. Iowa Plastics, Inc. v. PI, Inc., 832 F.3d 899, 903 (8th Cir. 2016) ("[S]tanding must persist throughout all stages of litigation, and must be demonstrated separately for each form of relief sought.") (citations omitted).  Despite DSA's protestations to the contrary, there is no "equitable" exception to the standing requirement.

Additionally, whether or not DSA is entitled to any proceeds that Smith receives from this case is irrelevant.  There is no claim that Smith assigned his cause of action to DSA, only any proceeds that he receives.  There is no basis to claim that this assignment of proceeds gives DSA standing in this lawsuit.  To the contrary, the submitted Assignment Agreement explicitly provides that it does not give DSA a right to participate in any litigation.  (See Dec. 28, 2016 Urban Aff., Ex. D, Assignment Agreement ("I recognize and agree that I am in no way attempting to direct or allow DSA or anyone acting on its behalf to direct, advise,

11

consult, manage or in any other way participate in any litigation proceedings which may now or in the future be undertaken on my behalf, by making this assignment. I acknowledge and agree that neither the DSA nor anyone acting on its behalf, has any right or ability to in any way affect, alter, modify or influence the result of any litigation which is now pending or which may be undertaken in the future.").) If Smith fails to pay proceeds to DSA that DSA is allegedly owed under the Assignment Agreement, such a claim would properly be addressed in a breach of contract action in state court; such a claim is not currently before this Court.

**B.    Sanctions**

On January 6, 2017, DSA filed a "Response Opposing Plaintiff Scott Smith's Motion for Sanctions Against Jennifer Urban and Notice of Motion for Sanctions Against Padraigin Brown Pursuant to Rule 11 of the Federal Rules of Civil Procedure." [Docket No. 30]  At that time, Smith had not filed a Rule 11 motion against Urban.

On January 26, 2017, after the 21-day safe harbor expired, Smith did file a Rule 11 motion for sanctions against Urban.  [Docket No. 35]  Smith requests an award of costs and attorneys' fees expended in bringing the Rule 11 motion and in responding to DSA's filing in this case.

1.    **Rule 11 Standard**

Rule 11 of the Federal Rules of Civil Procedure requires an attorney to

certify that, for any pleading or motion:

> (1) it is not being presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase the cost of
> litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted
> by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically
> so identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence
> or, if specifically so identified, are reasonably based on belief or a
> lack of information.

Fed. R. Civ. P. 11(b).  Rule 11 requires attorneys to "conduct a reasonable inquiry

of the factual and legal basis for a claim before filing." Coonts v. Potts, 316 F.3d

745, 753 (8th Cir. 2003).  "To constitute a reasonable inquiry, the prefiling

investigation must uncover a factual basis for the plaintiff's allegations, as well as

a legal basis." Id.  A claim is subject to sanctions if a "reasonable and competent"

attorney would not "believe in the merit of an argument." Id. (citation omitted).

"A motion for sanctions must be made separately from any other motion

and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed.

13

R. Civ. P. 11(c)(2). The motion must be served but must not be filed or presented to the Court if the challenged paper is withdrawn or corrected within 21 days after service. Id. A district court abuses its discretion if it awards Rule 11 sanctions based on a motion that does not comply with the safe harbor provision in that the motion "was not made separately from other motions or requests and [the moving party] did not serve a prepared motion on [the opposing party] [21 days] prior to making any request to the court." Gordon v. Unifund CCR Partners, 345 F.3d 1028, 1030 (8th Cir. 2003).

### 2. Rule 11 Motion for Sanctions Against Urban

#### a) Safe Harbor

Urban and DSA argue that Smith provided no notice before filing a Rule 11 motion on December 30, 2016. ([Docket No. 30] DSA Sanctions Brief at 4.) This is demonstrably false. Smith did not file his Rule 11 motion or otherwise provide it to the Court until January 26, 2017, more than 21 days passed after Urban received the Rule 11 motion on December 30. Smith complied with the safe harbor provision by serving the motion on Urban, waiting to file it with the Court for more than 21 days, and filing the motion in a separate document clearly stating the basis for the motion.

### b) Whether Urban's Conduct Was Improper

DSA's brief in opposition to the motion to dismiss [Docket No. 27] violated Rule 11 because it was submitted for an improper purpose and because its factual contentions lack evidentiary support.  Additionally, Urban continued to assert these unsubstantiated and inflammatory allegations in subsequent filings and even attempted to continue to offer inadmissible evidence into the record during oral argument.

First, DSA materially misrepresented facts in its filing.  DSA claimed that Smith was a current member and argued that it had no notice that he had resigned, when, in fact, documentary evidence shows that Wong received and acknowledged Smith's resignation in November 2015.  Additionally, DSA's original brief contains extensive facts alleging criminal wrongdoing by all DSA members except for Wong, and these are wholly irrelevant with regard to the issues in this ADA public access lawsuit against CCRE.  Many of the allegations are made with no citation to the record.  Moreover, despite Smith's opposition briefing alerting Urban to the lack of evidentiary support, Urban continued to file briefs with unsupported allegations and "affidavits" that are not based on personal knowledge and were not sworn, notarized, or submitted under penalty of perjury.  In fact, even during oral argument, Urban acknowledged that certain

allegations were "obviously . . . hearsay" and then continued to assert the truth of those incendiary allegations. Thus, at this point, Urban has still failed to submit any admissible evidence to support DSA's allegations.

Given that, for example, DSA's brief asserted that Smith is currently a member of DSA, yet he resigned from DSA more than one year ago, in writing, as acknowledged, in writing, by Wong, the allegation that Smith was a current member could not have been the product of reasonable pre-filing inquiry.

Second, DSA's brief was submitted for an improper purpose of harassing Browne and DSA's former members. The first 12 pages of DSA's brief accuse all of its former members, apart from Wong, of participating in a criminal scheme to defraud DSA. These allegations have no relevance to the issues before this Court in an ADA discrimination case against CCRE. In fact, many of the allegations involve individuals who are in no way associated with this case. The only issue relevant to the current motion is whether DSA has associational standing. Urban's brief was widely publicized in the local media, and news stories repeated the allegations contained her brief. Urban's true purpose in filing and refusing to withdraw the brief was to land a public relations blow on DSA's former members rather than to advocate in good faith the issue of whether DSA

should be dismissed for lack of standing.  Such purpose supports imposition of Rule 11 sanctions.  <u>See, e.g.</u>, <u>Danvers v. Danvers</u>, 959 F.2d 601, 604 (6th Cir. 1992); <u>Lukas v. Nasco Int'l, Inc.</u>, 128 F.R.D. 619, 623 (D.N.J. 1989).

The Court exercises its discretion to award sanctions against Urban.  Smith has requested that the Court award him the attorneys' fees and costs he has incurred in bringing his Rule 11 motion against Urban and in responding to Urban's filings.  After careful consideration, the Court concludes that the requested sanctions are appropriate in this case to deter such behavior in the future and to preserve the integrity of the judicial process.  Because Urban's original and subsequent briefs contained a variety of allegations, many of which were irrelevant, unsupported, and inflammatory, and some of which were blatantly false, Smith was required to incur attorneys' fees responding to improper allegations made for an improper purpose and in bringing a Rule 11 motion to stop Urban's unethical behavior.  Requiring Urban to pay sanctions equal to that sum will require Urban to bear the consequences of her actions and deter her, and other attorneys, from being tempted to take similar actions in the future.

Within ten days of the date of this Order, Smith shall submit evidence of the attorneys' fees and costs incurred in bring his Rule 11 motion against Urban and in responding to Urban's filings. Urban shall have five days from the date of Smith's filing to submit her objections, if any to the amount of those fees.

Furthermore, in order to avoid compounding Urban's violations and exacerbating the harassment of those accused in her filings, the Court shall seal the following documents, including all attachments thereto: Docket Numbers 27 (Plaintiff Disability Support Alliance's Response Opposing Joint Motion to Dismiss and attached exhibits); 29 (Affidavit of Exhibits and attached exhibits); 30 (Plaintiff Disability Support Alliance's Response Opposing Plaintiff Scott Smith's Motion for Sanctions); 31 (Affidavit of Exhibits and attached exhibits); 41 (Plaintiff Disability Support Alliance's Response Opposing Plaintiff Scott Smith's Motion for Sanctions); and 42 (Affidavit of Exhibits and attached exhibits).

### 3. Rule 11 Request for Sanctions Against Browne

On January 6, 2017, DSA gave notice that it planned to file a Rule 11 motion for sanctions against Browne. It improperly included this "notice" in its brief filed with the Court. It asserted that Smith's Rule 11 motion was brought for harassment purposes, without factual support, and because Browne

continues to engage in litigation to DSA's detriment.  DSA further argues that the

Court should sua sponte impose Rule 11 sanctions on Browne based on Smith's

filings.

The Court denies DSA's request for sanctions.  DSA failed to comply with

the safe harbor requirements.  First, the motion was filed with the Court before

the expiration of the 21-day safe harbor.  Second, the request was not filed in a

separately prepared motion.  Third, it requested sanctions based on a Rule 11

motion that Smith had not yet filed with the Court.  Fourth, a basis for DSA's

request was that Smith and Browne failed to follow Rule 11's safe harbor

provision.  The record demonstrates that, in fact, Smith and Browne did follow

Rule 11's safe harbor provision.


Accordingly, based upon the files, records, and proceedings herein**, IT IS

HEREBY ORDERED**:

1. Plaintiff Scott Smith and Defendant CCRE, LLC's Joint Motion to
   Dismiss [Docket No. 22] is **GRANTED** and Plaintiff Disability
   Support Alliance is **DISMISSED** as a Plaintiff in this case.

2. Smith's Motion for Sanctions Against Jennifer Urban Pursuant to
   Rule 11 of the Federal Rules of Civil Procedure [Docket No. 35] is
   **GRANTED**.  Attorney Jennifer Urban shall pay Rule 11
   monetary sanctions to Plaintiff Scott Smith in the amount of

Smith's reasonable attorneys' fees and costs incurred in bringing his Rule 11 motion and in responding to Urban's filings in this case. Within ten days from the date of this Order, Smith shall submit a detailed accounting of the attorneys' fees and costs incurred. Urban shall submit her objections, if any, to the amount of those fees and costs within five days from the date of Smith's filing.

3. Plaintiff Disability Support Alliance's request for Rule 11 sanctions against attorney Padraigin Browne, contained within its Response Opposing Plaintiff Scott Smith's Motion for Sanctions [Docket No. 30], is **DENIED**.

4. The following documents (including all attachments thereto) shall be sealed and remain sealed until further order of the Court:

Docket Number 27 (Plaintiff Disability Support Alliance's Response Opposing Joint Motion to Dismiss and attached exhibits);
Docket Number 29 (Affidavit of Exhibits and attached exhibits);
Docket Number 30 (Plaintiff Disability Support Alliance's Response Opposing Plaintiff Scott Smith's Motion for Sanctions);
Docket Number 31 (Affidavit of Exhibits and attached exhibits);
Docket Number 41 (Plaintiff Disability Support Alliance's Response Opposing Plaintiff Scott Smith's Motion for Sanctions);
Docket Number 42 (Affidavit of Exhibits and attached exhibits).

5. The Clerk of Court shall send a copy of this Order to:

Office of Lawyers Professional Responsibility
1500 Landmark Towers

345 St. Peter St.
St. Paul, MN 55102-1218


Dated:   April 11, 2017                    s/ Michael J. Davis

Michael J. Davis
United States District Court